1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRIC COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| **ELIE, GIL**, | |
|     Plaintiff, | CASE NO. |
| vs. | **COMPLAINT AND JURY DEMAND** |
| **NORTH STAR FISHING COMPANY, LLC.**, aka/and **CAPE HORN VESSEL, LLC.**, a Washington Limited Liability Company**;** and **GLACIER FISH COMPANY, LLC.**, a Washington Limited Liability Company, | |
|     Defendants. | |

    Plaintiff Gil Elie, upon personal knowledge as to himself and upon information and belief as to other matters, hereby complains as follows:

COMPLAINT AND JURY DEMAND - 1

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

## NATURE OF THE CASE

1.      This is an employment discrimination case, alleging retaliation pursuant to 42 U.S.C. §1981 (§1981) and hostile work environment and retaliation pursuant to the Washington Law Against Discrimination RCW § 49.60, *et seq*. (WLAD).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the §1981 claim pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(4).

3.      This Court has supplemental jurisdiction over the WLAD claims pursuant to 28 U.S.C. §1367.

4.      Pursuant to 28 U.S.C. §1391, venue is proper in the Western District of Washington because all Defendants are residents of the State of Washington and this judicial district.

5.      Pursuant to Local Rule 3(e), the Seattle Division is the proper intradistrict assignment because each Defendant's principal place of business is in King County, Washington.

## PARTIES

6.      Plaintiff, Gil Elie, is an African American former employee of Defendants: North Star Fishing Company, LLC, Cape Horn Vessel, LLC, and Glacier Fish Company, LLC. (collectively referred hereto as "Defendants").

7.      At all material times, Defendants employed Plaintiff as a Level 1 Processor.

8.      Plaintiff worked aboard Defendants' vessel, the F/T Cape Horn (hereinafter also referred to as the "Vessel").

9.      As an employee of Defendants, Plaintiff had a contractual relationship with Defendants within the meaning of §1981.

COMPLAINT AND JURY DEMAND - 2

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1         10.     At all material times, Plaintiff was an employee of Defendants within the meaning

2  of the WLAD.

3         11.     Plaintiff's compensation was based on a production share of .55% multiplied by

4  the value of the trip.

5         12.     At all material times, Defendants were the owners and or operators of the F/T

6  Cape Horn.

7         13.     At all material times, each named Defendant was a Washington limited liability

8  company doing business in the State of Washington.

9         14.     At all material times, each named Defendant were related entities constituting a

10  single employer, as defined in Paragraph 6, above.

11         15.     At all material times, Steve Doremus was the Captain of the F/T Cape Horn.

12         16.     At all material times, Peter Pack was the First Mate of the F/T Cape Horn.

13         17.     At all material times, Noelle Rucinski was the Purser of the F/T Cape Horn.

14         18.     Rucinski introduced herself to Plaintiff as Defendants' human resources

15  representative.

16         19.     At all material times, Alfredo Amezcua was the Foreman of the F/T Cape Horn.

17         20.     Amezcua was Plaintiff's direct supervisor.

18         21.     Amezcua had and exercised authority to make tangible employment decisions

19  concerning the terms and conditions of Plaintiff's employment, including, *inter alia,* the ability

20  to issue Plaintiff discipline, assign or reassign Plaintiff's jobs and shifts, to suspend Plaintiff, and

21  to terminate Plaintiff's employment.

22         22.     At all material times, Nick Clubb was the Deckboss of the F/T Cape Horn.

23         23.     Clubb had supervisory authority over Plaintiff.

24

COMPLAINT AND JURY DEMAND - 3

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

24.     At all material times, Amy Hollingsworth and Rosy Barocio-Garibay served as Defendants' Vessel Recruiters.

**FACTUAL ALLEGATIONS**

25.     In or around late-April or early-May 2021, Plaintiff was quarantined as a prerequisite to accepting Defendants' written employment offer, and at that time, Defendants began paying him.

26.     Plaintiff signed a contract with Defendants on May 21, 2021, to work as a Level 1 Processor aboard one of its fishing vessels.

27.     On or around May 21, 2021, Plaintiff was assigned to work aboard Defendants' vessel the F/T Cape Horn.

28.     On May 24, 2021, Plaintiff boarded the F/T Cape Horn, which departed from Dutch Harbor in Unalaska, Alaska on the same day.

29.     Plaintiff was one of four black crewmembers aboard the F/T Cape Horn.

30.     Plaintiff's job responsibilities included without limitation: working at production stations throughout the Vessel's processing factory, loading fish, unloading freezers, and heading and shoveling fish.

31.     On or around June 5, 2021, Plaintiff was on a break from his shift in the break room. Amezcua was also in the break room, talking to another employee in Spanish. Plaintiff and Amezcua were sitting about four feet from each other on benches that faced one another. During his conversation with the other employee, Amezcua turned his head towards Plaintiff, glanced towards him, and said "mayate." Plaintiff was in disbelief. Amezcua looked to Plaintiff several more times after he said the term.

32.     Plaintiff grew up in a multi-cultural environment and had several Latino friends.

COMPLAINT AND JURY DEMAND - 4

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

Growing up, Plaintiff heard the term "mayate" used as a derogatory term to refer to African Americans. Plaintiff learned it was an offensive term for African Americans from his Latino friends.

33.     On or around June 6, 2021, Amezcua was sitting directly across from Plaintiff in the break room speaking in Spanish to another employee. No other employees were present in the break room. Amezcua made eye contact with Plaintiff several times while they were sitting in the break room. During his conversation, Amezcua leaned forward towards Plaintiff, looked at Plaintiff briefly, and said "mayate" again while speaking to the other employee. Amezcua and the other employee started laughing. Plaintiff sat there for a couple seconds, frozen, before he returned to his shift.

34.     The next day, during Plaintiff's shift that began on June 7, 2021, Plaintiff was working at his cutting station. Amezcua approached Plaintiff's station and began speaking to Plaintiff's coworker who was working directly beside him.

35.     Amezcua pointed at Plaintiff and called him "mayate."

36.     Amezcua and Plaintiff's coworker started laughing.

37.     Plaintiff never heard Amezcua use the term "mayate" to refer to white or Hispanic employees.

38.     Plaintiff reasonably believed that Amezcua's use of "mayate" constituted unlawful racial harassment on the basis of his race.

39.     When Plaintiff went on break, approximately 15-30 minutes later, he reported Amezcua's use of the slur to Purser Rucinski, who introduced herself to Plaintiff as Defendants' human resources representative aboard the Vessel.

40.     Rucinski instructed Plaintiff to report to the Wheelhouse on his next break to

COMPLAINT AND JURY DEMAND - 5

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1   speak further with herself and First Mate Pack.

2       41.   Plaintiff met with Rucinski and Pack in the Wheelhouse on the morning of June 8,

3   2021.[1]

4       42.   He told Rucinski and Pack that Amezcua had used racial slurs towards him on

5   several occasions.

6       43.   Plaintiff audio recorded the meeting.

7       44.   Relevant portions of the audio transcript[2] follow:

> **Pack** (00:20):  Well, what's the problem?
> **Plaintiff** (00:31):  So, I mean, pretty much, I was, like, in the middle of working and he makes a, you know, its not the first time, like, he made a racial comment.
> **Pack** (00:41):  What did he say?
> **Plaintiff** (00:42):  Mayate.
> **Pack** (00:43):  What did he say?
> **Plaintiff** (00:44):  Huh?
> **Pack** (00:45):  What did he say?
> **Plaintiff** (00:46):  Mayate. It's Spanish-
> **Pack** (00:46):  Mayate?
> **Plaintiff** (00:49):  Spanish for the N-word.
> **Pack** (00:50):  Is it?
> **Plaintiff** (00:51):  Yes.
> **Plaintiff** (00:53):  It's not the first time either.
> **Pack** (00:55):  Yeah, but I think... these guys call each other the N...
> **Plaintiff** (00:58):  No, it was made towards me.
> **Pack** (00:59):  I know, but they-
> **Plaintiff** (01:01):  It was a directed comment towards me.
> **Pack** (01:01):  These- these guys talk to each other and, use that... it's- it's, like-
> **Plaintiff** (01:07):  This is my boss though, [crosstalk 00:01:08].

---

[1] Plaintiff worked on second shift, which occurred from 4 p.m. to 8 a.m. The incident with Amezcua occurred during Plaintiffs shift that began on June 7, 2021 and continued into the morning of June 8, 2021.

[2] For the Court's convenience, a copy of the original audio recording is available at https://www.youtube.com/watch?v=E5s0fLgt7UU.

COMPLAINT AND JURY DEMAND - 6

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

**Pack** (01:08):  I know. I- yeah, I know. I'll talk to him. But you gotta understand, if you think you're being racist, it's not- it's not. It's [crosstalk 00:01:16].

**Plaintiff** (01:16):  I'm not- I'm not saying maybe his actions, but the fact that it creates a hostile [crosstalk 00:01:21].

**Pack** (01:20):  So I'll talk to him. I'll talk to him and tell him to watch out but... Yeah. Okay, don't worry. Listen, the real Foreman, he's a black guy too, all right? You understand? It's not- there's not- there isn't racism on- on this boat.

**Plaintiff** (01:35):  I'm just saying man.

**Pack** (01:36):  Yeah, I know.

**Plaintiff** (01:37):  I'm not supposed to be expect- expected to, like, move fairly through the ranks and, my boss is calling me [cross talk]

**Pack** (01:43):  Yeah, okay. All right. Well, like I said, it's not-

**Plaintiff** (01:43):  And thinking I don't understand him.

**Pack** (01:46):  Yeah, but it's not towards you. It's just something-

**Plaintiff** (01:48):  It was [cross talk] This comment was directly towards me though.

**Pack** (01:51):  Gil, do you understand what I'm saying? Okay, I'll have a talk with him, all right? No more. All right? He won't say that word anymore. Okay?

**Plaintiff** (02:00):  That's it?

**Pack** (02:01):  Yeah, that's it. What do you want me to do?

**Plaintiff** (02:04):  All right. Well-

**Pack** (02:04):  I can...

**Plaintiff** (02:08):  All right. I brought it to your attention just so that I can-

**Pack** (02:09):  Yeah, I know. He's- he didn't physically abuse you. He didn't do anything. He just said one word and- which is not- he's not supposed to say, and I'll have a talk with him and I'll tell him, "Don't fucking do it anymore," you know?

**Plaintiff** (02:21):  All right.

**Pack** (02:22):  Is he treating you any different? Gil?

**Plaintiff** (02:25):  I can't- I really can't tell. I'm so focused on my work to be honest with you.

**Pack** (02:29):  (laughs)

**Pack** (02:29):  Okay.

**Rucinski** (02:33):  Uh, listen, so, um, like, I do- I hear you, like, when you get-

**Plaintiff** (02:37):  Just makes me uncomfortable, like-

**Rucinski** (02:40):  When you get called something like that, like, yeah, you're like, "What the fuck."

**Plaintiff** (02:41):  It's like- and I- I give everyone the upmost respect. That's just how I was raised.

**Pack** (02:44):  Yeah, I know. You know what, these guys fucking call me chink sometimes too.

COMPLAINT AND JURY DEMAND - 7

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Rucinski** (02:48):  It's a different- it's a different world. You should hear the shit they call me, like, and it- and it- it's, like, it's shocking-
**Pack** (02:54):  They call an officer on the boat chink sometimes, you know? Just when they're joking around, you know?
**Plaintiff:** Like, what the fuck.
**Rucinski** (03:04):  It's a really different environment, like, it's... it's, yeah, it's, like, a really different environment.
**Pack** (03:10):  It's not- nothing towards you, Gil. Trust me man. Trust me.
**Plaintiff** (03:14):  I'm just trying to do my job.
**Pack** (03:15):  I know. I know.
**Rucinski** (03:16):  And if you think, and if you feel, like, someone's, like, coming at you, then you're not gonna, you're not gonna wanna work here, and it's going to feel good, and we just want to say, like, it's not- it's probably not personal, like, it's definitely not acceptable, but, like, I want you to feel like- like you're being heard?
**Plaintiff** (03:30):  Yeah.
**Rucinski** (03:31):  And that it does suck. Like, it does suck to get, like, talked to the way we all talk to each other on the boat.
**Plaintiff** (03:37):  Right.
***
**Rucinski** (03:55):  The thing is- and there's a line and if it's an ethnic slur, like, yeah, I think, sure, definitely, like, we'll stop it and if it- if it keeps happening, bring it up again, like, we definitely wanna take care of anything here and on the boat, like, just want you to feel, like, comfortable, you know?
**Plaintiff** (04:09):  This is a person that controls my, you know, my ultimately, my level going up? Who's to say that, there's not gonna be retaliation for it.
**Pack** (04:16):  He probably jokes around with the Foreman, which is the original Foreman. He's the assistant Foreman. This is the second Foreman. The original Foreman is black too, you know? [crosstalk 00:04:26] he's a big guy [crosstalk 00:04:28].
***
**Pack** (04:47):  Why don't you call him a pendejo or something?
**Plaintiff** (04:49):  'cause I'm not- no way, like, I'm not gonna stoop that low , like, I'm trying to do my fucking job, you know what I mean? Make my money, get the fuck out of here and come back again, like-
**Pack** (04:57):  Come on. Just, fucking next time if he says something like that, "Ay, stupid pendejo." Nah, I'm kidding.
**Rucinski** (05:01):  (laughs).

    45.   Following Plaintiff's meeting with Rucinski and Pack, Amezcua continued and intensified his mistreatment of Plaintiff.

COMPLAINT AND JURY DEMAND - 8

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

46.     Within hours of Plaintiff's complaint about Amezcua's racial slurs, Amezcua informed Plaintiff that he was transferring him from second shift to third shift.

47.     Plaintiff asked Amezcua why he transferred him. Amezcua gave no explanation and just walked away.

48.     Second shift occurred between 4 p.m. and 8 a.m.

49.     Third shift required that Plaintiff work from 12 a.m. to 4 p.m.

50.     The change in shift time interrupted Plaintiff's sleep schedule and complicated his ability to communicate with friends, family, medical personnel, the Equal Employment Opportunity Commission, or legal counsel.

51.     Plaintiff's coworkers, including his white and Hispanic coworkers and coworkers who did not report racial harassment, did not also have their shifts changed.

52.     Before Plaintiff's shift that began on June 8, 2021, Rucinski told Plaintiff he was no longer allowed to work on the upper deck of the Vessel.

53.     Plaintiff asked why he was no longer allowed on the upper deck. Rucinski said something to the effect of, "it would just be better if you stayed on the lower deck."

54.     Besides Plaintiff, all other crew members were allowed on the upper deck.

55.     During Plaintiff's shift that began on June 8, 2021, Plaintiff was working in the factory when his coworker knocked over a bin of fish.

56.     Amezcua screamed at Plaintiff to pick up the fish and warned him: "Pick it up or see what happens."

57.     Plaintiff picked up the fish.

58.     The next day, during Plaintiff's shift that began on June 9, 2021, he was packing fish at the Packing Station.

COMPLAINT AND JURY DEMAND - 9

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    59.    Amezcua approached the Packing Station and began to throw fish at Plaintiff.

2    60.    Amezcua struck Plaintiff with several fish in the chest and face and he was

3    splashed repeatedly with residual water from the fish and packing bins.

4    61.    Plaintiff's coworker, Charles Whitaker, was working at the Packing Station

5    directly beside Plaintiff.

6    62.    Amezcua neither threw fish at or in Whitaker's direction, nor at or in the direction

7    of any other crewmembers.

8    63.    Plaintiff asked Amezcua to stop several times.

9    64.    Amezcua refused, stared at Plaintiff, smirked, and continued to assault him with

10   fish and water.

11   65.    Rucinski was working at the Observer Station, which is adjacent to the Packing

12   Station.

13   66.    Plaintiff told Rucinski that Amezcua was assaulting him with fish and water.

14   67.    Rucinski instructed Plaintiff to demonstrate Amezcua's behavior and asked

15   whether there were any witnesses.

16   68.    Plaintiff demonstrated Amezcua's behavior to Rucinski and told her that he was

17   working shoulder-to-shoulder with Charles Whitaker who witnessed Amezcua's assault and

18   Plaintiff's requests that he stop throwing fish at him.

19   69.    Rucinski asked Whitaker whether he witnessed the incident.

20   70.    Plaintiff heard Whitaker tell Rucinski that he witnessed Amezcua throw fish at

21   Plaintiff, as Plaintiff described.

22   71.    Plaintiff heard Rucinski tell Whitaker that she would have him make a written

23   statement about the incident later.

24

COMPLAINT AND JURY DEMAND - 10

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

72.     Whitaker subsequently informed Plaintiff that Defendants never asked him to make a written a statement about the incident.

73.     Rucinski asked Plaintiff to report to the Captain's Deck after his shift to make an incident report.

74.     Plaintiff went to the Captain's Deck as instructed to fill out his incident report where Rucinski and First Mate Pack were present.

75.     Plaintiff again reported Amezcua's assault, made a written statement, and reminded Rucinski that Whitaker witnessed the entire incident.

76.     Instead of asking Plaintiff questions or otherwise gathering more information about Amezcua's assault and witnesses, Rucinski informed Plaintiff she had received reports that Plaintiff was talking back to his supervisors and warned Plaintiff against such conduct.

77.     Plaintiff told Rucisnki and Pack that he had not "talked back" to any of his supervisors and asked whether the criticism was related to his complaints against Amezcua.

78.     Plaintiff audio recorded the meeting.[3]

79.     A relevant portion of the transcript from the audio recording follows:

> **Rucinski**: Okay. So, um, we're gonna ask you about this, so we're getting, kind of, all sides of the incident.
> **Plaintiff**: Okay.
> **Rucinski**: And a lot of these, um, your supervisors are saying that some of this is stemming not from, like, anything against you, but from things like insubordination, like, out on deck. For instance, like, if they ask you to do something, um, they're getting a little backtalk or resistance towards it.
>                      ***
> **Rucinski**: Um, it's just that if... I don't want to say, like... Like, from the other side, if it's not- if you're not getting picked on, but if you're

---

[3] For the Court's convenience, a copy of the original audio recording is available at https://www.youtube.com/watch?v=3JARDPOzfEc&list=PLdtaCrg_SEn89hiJ4cfNG-JI55qYtlzV4&index=8&t=4s

COMPLAINT AND JURY DEMAND - 11

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

not doing the job or following orders, and you're not doing the job properly, you may be getting a little bit more, uh... I mean, you're gonna be getting told what to do.

**Plaintiff**: Well, I d- The thing is, I don't have an issue with anyone else. This is more... This is a very specific issue stemming from, like, again, from when I was called derog- derogatory slur, you know?

**Rucinski**: Okay.

**Plaintiff**: So now, my workplace becoming more hostile work environment that I'm becoming highly uncomfortable in, and I'm still trying to do my job.

           \*\*\*

**Plaintiff**: I just feel like you guys aren't taking anything... You know, you guys are, kind of... You guys have created a cult-... I don't, I'm new here, I've only been here two weeks, but the culture just seems as if it just seems, you know, like... Like, again, two days ago, you guys told me I should, kind of, just deal with it, I should deal with the racial slurs and things like that.

**Pack**: We didn't tell you.

**Plaintiff**: Yes, that's exactly what you said. You said that-

**Pack**: I said it- sometimes that goes on on the boat, you know.

**Plaintiff**: And that it's the culture of the boat, and that you get called a chink sometimes, and you should- I should hear the things that are said to you, and that I should-

**Rucinski**: Mm-hmm (affirmative). But also, there's, like, a line. And if that line got crossed with you, we're gonna stop it. You know, we're gonna do what we can to stop it.

**Plaintiff**: Well, now it, kind of, feels like retaliation. And again, I'm here to do my... If I didn't want to be here, I'd make it very clear I didn't want to be here.

           \*\*\*

**Plaintiff**: Like, we're all adults here. If I want, you know... But again, I'm trying to do- I'm trying to complete my contract, do my job. And I be- and I feels, like, you know, this... My one again when I first brought it up, it wasn't really taken seriously. I was, kind of, la- I felt laughed at almost.

           \*\*\*

**Plaintiff:** And now it's- and then I- and then I'm telling you very- I'm telling you very specific incidents between me and Alfredo. Me and anyone else never had an issue. Why was that never brought to my attention before? Now that I'm bringing it up, now that I'm conc- letting you know that, "Hey, this- this is- this situation is escalating." You guys are- now you're just saying that, "Well, this person on the deck said that this happened." It seems like-

**Rucinski:** I think because we have to look at your character as well

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    now. You know, and unfortunately, because it is brought up, like,
it's gonna be more under scrutiny, you know.

2    80.    Following the meeting with Pack and Rucinski, Plaintiff was sitting in the dining

3    area with Whitaker when Amezcua approached and informed Whitaker that he was promoting

4    him to Level 2 Processor.

5    81.    Whitaker told Plaintiff that he wondered whether Defendants promoted him as an

6    incentive to him so that he did not provide an official written statement corroborating Plaintiff's

7    complaint about Amezcua's assault.

8    82.    Following the meeting with Rucinski and Pack, Plaintiff found his clean laundry

9    hanging from an oil line behind a filthy garbage bin instead of on the clean-laundry hooks.

10   83.    Cook, Jack Collucci, does the crew's laundry. Crewmembers are not allowed to

11   do their own or other crew member's laundry.

12   84.    Other crewmembers' laundry bags were hanging in the normal location, from the

13   clean-laundry hooks in the laundry room:

   

*(Plaintiff's laundry)*          *(Other crewmember's laundry)*

COMPLAINT AND JURY DEMAND - 13

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

85.     Plaintiff subsequently found his clean laundry hanging behind the garbage bin on several occasions.[4]

86.     On Plaintiff's shift that began on June 10, 2021, Amezcua called him to the Wheelhouse for a meeting with Captain Doremus.

87.     Doremus and Amezcua issued Plaintiff a disciplinary warning for allegedly refusing a direct order from Amezcua when Plaintiff's coworker knocked over his bin of fish.

88.     Plaintiff explained that he did not knock over the fish and did not refuse Amezcua's order to pick up the fish.

89.     Plaintiff refused to sign the disciplinary paperwork because it inaccurately described his conduct.

90.     When Plaintiff informed Captain Doremus that he was recording the meeting, Captain Doremus ended it.

91.     Plaintiff left the meeting and went to the dining area.

92.     While Plaintiff was in the dining area, Amezcua approached Plaintiff, instructed him to remove his uniform/work gear, and told him not to report for his shift.

93.     Amezcua effectively terminated Plaintiff's employment.

94.     On the morning of June 11, 2021, Captain Doremus gave Plaintiff resignation paperwork and instructed him to sign.

95.     Plaintiff had not resigned, so he refused to sign the paperwork.

96.     When Plaintiff reported to the dining area for his meal that day, Cook Collucci denied him access to the prepared hot meal that had been set out for the crewmembers.

_____

[4] For the Court's convenience, a copy of the original video recording is available at https://www.youtube.com/watch?v=5ipqK40XQUI&list=PLdtaCrg_SEn89hiJ4cfNG-JI55qYtlzV4&index=9.

COMPLAINT AND JURY DEMAND - 14

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    97.    Collucci told Plaintiff that he was not allowed to eat until the rest of the crew was

2    finished eating.

3    98.    Plaintiff protested to Collucci that by the time the crew has finished eating there

4    would be no food left and the kitchen would be closed.

5    99.    Plaintiff asked if he could purchase a serving of the prepared meal.

6    100.    Collucci refused.

7    101.    Collucci told Plaintiff that he could eat cereal, bread, or fruit, or that he could sell

8    him candy bars, but he could not buy the prepared meal.

9    102.    Other employees, including Plaintiff's white and Hispanic coworkers and

10    coworkers who had not reported discrimination, were not denied meals.

11    103.    On June 12, 2021, Plaintiff complained to Captain Doremus that he was being

12    denied proper meals on a ship working the Bearing Sea and requested that he be allowed to make

13    a legal phone call.

14    104.    Plaintiff made an audio recording of the meeting.[5]

15    105.    A portion of the transcript of the meeting follows:

16    **Plaintiff** (00:00): Hello.
    **Captain Doremus** (00:04): Hello.
17    **Plaintiff** (00:06): I... Can... I'd like to file a grievance please.
    **Captain Doremus** (00:08): You, you would like to what?
18    **Plaintiff** (00:10): To file out a complaint.
19    **Captain Doremus** (00:14): (Laughter). What would you like to
    complain about?
20    **Plaintiff** (00:16): I'm not being fed proper nutritional meals.
    **Captain Doremus** (00:18): Uh...
21

22    ───────────────────────

23    [5] For the Court's convenience, a copy of the original audio recording is available at
    https://www.youtube.com/watch?v=CUeX9ncFUHs&list=PLdtaCrg_SEn89hiJ4cfNG-
24    JI55qYtlzV4&index=7.

COMPLAINT AND JURY DEMAND - 15

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

**Plaintiff** (00:21): This is two days.

**Captain Doremus** (00:22): You get the same meals everybody else on the vessel's being-

**Plaintiff** (00:24): No I'm not. I'm being told I can't eat at certain times. And by the time I can eat, it's not there.

**Captain Doremus** (00:29): Just a minute. You stand up in that corner and wait for me. Please stand over there.

**Plaintiff** (00:29): Okay.

**Captain Doremus** (00:48): I have a morbid curiosity about your [inaudible 00:00:48]. And uh, since you aren't really working [inaudible 00:00:57] I wouldn't have to take your grievance. But I'll listen, I'll listen to your grievance.

**Plaintiff** (01:02): What was that?

**Captain Doremus** (01:03): I said since you've uh... elected not to work any longer and are considered "A Quit", then I'll listen to your grievance but I really don't have to give you the paperwork to report it. So as far as that goes I'm not doing it.

But, as far as meals go, so you understand I'll get a [inaudible 00:01:24] and I'll deliver it to you later.

**Plaintiff** (01:26): Okay.

**Captain Doremus** (01:26): You are uh... You are directed to take your meals after the crew that works on the vessel has finished-

**Plaintiff** (01:35): No, those are being taken away the minute uh... No. They are-

**Captain Doremus** (01:39): The food is-

**Plaintiff** (01:40): it's been two days in a row.

**Captain Doremus** (01:41): No. You was down at 10:30 this morning to have food.

**Plaintiff** (01:45): No I wasn't.

**Captain Doremus** (01:46): Yes you were. The cook, the cook reported it to me.

**Plaintiff** (01:46): I had cereal!

**Captain Doremus** (01:49): I have all your activities being monitored.

**Plaintiff** (01:52): I had cereal, trust me-

**Captain Doremus** (01:54): Come on, that's-

**Plaintiff** (01:54): I'm monitoring my own activities.

**Captain Doremus** (01:55): But that's food.

**Plaintiff** (01:56): It's not a nutritional balanced meal.

**Captain Doremus** (02:00): Sorry. Then uh, then I would suggest, Gil, you know the meal times, that when the meal times are-

COMPLAINT AND JURY DEMAND - 16

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

**Plaintiff** (02:07): I'm being denied food at proper meal times.

**Captain Doremus** (02:09): I'm sorry, you're not.

**Plaintiff** (02:10): I am.

**Captain Doremus** (02:12): End of conversation.

**Plaintiff** (02:13): Um, also, may I-

**Captain Doremus** (02:13): End of conversation. Sir.

**Plaintiff** (02:15): I'd like to make a phone call.

**Captain Doremus** (02:17): No, I'm not allowing you a phone call. I have not been instructed through the office that I have to let you use a phone call. You have your email, please use your email.

**Plaintiff** (02:26): Sir, are you denying me the right to make a phone call?

**Captain Doremus** (02:28): I'm not denying you anything. I'm just telling you that anything you want to do, I have to have clearance through the office, and I'll allow you to do it.

**Plaintiff** (02:37): Sir, when can you have clearance to allow-

**Captain Doremus** (02:37): Tomorrow.

**Plaintiff** (02:40): Me to make a legal phone call? At what time?

**Captain Doremus** (02:42): I'll uh, find you when I have the information.

**Plaintiff** (02:45): What time?

**Captain Doremus** (02:46): I don't have a time for you, Gil. Because I have not spoken to anybody. And when I find a time, and it's 4:30, home center closing, it's 5:30 in Seattle, I'm not going to wake people up for your account.

**Plaintiff** (03:00): Okay.

**Captain Doremus** (03:00): If you want to have these kind of conversations with me, please come up during business hours down south, to have these conversations.

**Plaintiff** (03:08): All right. I won't call, I will be up here in the morning then.

**Captain Doremus** (03:10): Oh, not before eight o' clock.

**Plaintiff** (03:14): Sound good. All right, thank you.

**Captain Doremus** (03:21): [inaudible 00:03:21].

**Plaintiff** (03:20): Okay, like I said, I'd like to schedule a legal phone call. If you wanna deny my rights to do so, that's your choice. Thank you.

**Captain Doremus** (03:29): [inaudible 00:03:29].

106.   The next time Plaintiff went to the dining area to eat following his complaint to Captain Doremus, he found his pre-plated food in the trash.

107.   The plate had his name, "Gil," and was dated "6/12."

COMPLAINT AND JURY DEMAND - 17

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

108.    Plaintiff videotaped the incident.[6]

109.    A still image from the videotape follows:



110.    The transcript of the video follows:

**Plaintiff (00:00):** Is there a reason my food is in the trash? Excuse

---

[6] For the Court's convenience, a copy of the original video is available at
https://www.youtube.com/watch?v=bChZHr2YHGA&list=PLdtaCrg_SEn89hiJ4cfNG-JI55qYtlzV4&index=3.

COMPLAINT AND JURY DEMAND - 18

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

me Jack, is there a reason my food is in the trash? Wow. Once again. Excuse me Jack, sir? Excuse me Jack, is there a reason my food is in the trash?

**Collucci (00:47):** You're not supposed to be filming in here.

111.    Plaintiff subsequently found his pre-plated meals in the trash on multiple occasions.

112.    On June 12, 2021, Plaintiff sent Vessel Recruiter Rosy Barocio-Garibay an email in which he explained that he had been subjected to racial slurs, that he reported the slurs, and that following his complaints he had been transferred, assaulted, disciplined, terminated, denied access to food, denied access to the telephone to seek assistance, and treated in way that was intimidating and threatening.

113.    Plaintiff requested "immediate help."

114.    Rosy Barocio-Garibay did not respond to Plaintiff's email.

115.    The harassment and retaliation against Plaintiff continued.

116.    On June 13, 2021, as Plaintiff entered the dining area to see if he could eat, Rucinski said aloud: "I would keep coming back for free food, too! Free food would keep me coming back!"

117.    The other crewmembers laughed at Rucinski's comment.

118.    On June 13, 2021, Plaintiff had a meeting with Captain Doremus and Defendants' Vessel Recruiter, Amy Hollingsworth, who was present via telephone.

119.    Plaintiff explained to Hollingsworth and Doremus that after he complained of racial slurs, the mistreatment against him continued and intensified, including by, *inter alia,* being disciplined, terminated, assaulted, threatened, denied food, and subjected to taunts and intimidation, including by Rucinski, Amezcua, Captain Doremus, and others.

120.    Hollingsworth informed Plaintiff that Defendants had determined there was not

COMPLAINT AND JURY DEMAND - 19

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

enough evidence to validate his complaint that Amezcua used racial slurs, despite that First Mate

Pack and Purser Rucinski previously admitted to Plaintiff that it is normal in the environment for

crew members to use racial slurs and other "shocking" language regularly, e.g.:

> **First Mate Pack** (00:55): Yeah, but I think... these guys call each other the N...
> **Plaintiff** (00:58): No, it was made towards me.
> **First Mate Pack** (00:59): I know, but they-
> **Plaintiff** (01:01): It was a directed comment towards me.
> **First Mate Pack** (01:01): These- these guys talk to each other and, use that... it's- it's, like-
> \*\*\*
> **First Mate Pack** (02:44): Yeah, I know. You know what, these guys fucking call me chink sometimes too.
> **Rucinski** (02:48): It's a different- it's a different world. You should hear the shit they call me, like, and it- and it- it's, like, it's shocking-
> **First Mate Pack** (02:54): They call an officer on the boat chink sometimes, you know? Just when they're joking around, you know? Like, what the fuck.
> **Rucisnki** (03:04): It's a really different environment, like, it's... it's, yeah, it's, like, a really different environment.[7]

121.    Hollingsworth informed Plaintiff that she believed Plaintiff resigned because he

did not return to his shift following his disciplinary meeting with Captain Doremus and Foreman

Amezcua.

122.    Plaintiff repeatedly explained that he had not resigned and did not fail to show up

to his shift; rather, Amezcua had instructed him that he was not allowed to report to his shift.

123.    Hollingsworth admitted that Defendants needed to look into the situation more to

understand whether Plaintiff was actually fired and did not resign.

124.    Plaintiff made an audio recording of the meeting.[8]

---

[7] *See supra* note 2, and accompanying text and audio.

[8] For the Court's convenience, a copy of the original video is available at
https://www.youtube.com/watch?v=-z77GkEpN8w&list=PLdtaCrg_SEn89hiJ4cfNG-JI55qYtlzV4&index=5.

COMPLAINT AND JURY DEMAND - 20

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

125.    A portion of the transcript follows:

**Plaintiff** (17:11): And also, why am I being not allowed to go ... Am ... Have I been terminated? Why am I not being allowed back to my job duties?
**Hollingsworth** (17:22): Because once a crew member, um, doesn't return to work-
**Plaintiff** (17:26): I was told not to. I was given clear directions.
**Hollingsworth** (17:29): ... um, he, you know, if he quits.
**Plaintiff** (17:29): I'm, I'm, I'm telling you right now, I was given clear directions not to return by the captain. So why am I now-
**Captain Doremus** (17:35): That is incorrect.
**Hollingsworth** (17:36): Mm-hmm (affirmative).
**Plaintiff** (17:37): So why ... So what is ... That doesn't even make sense. That's totally contradicting what I'm saying
**Hollingsworth** (17:47): From, from what I, from what I understand, um, that you came and worked half of your shift, and then, um, you did not return to work after lunch. Um, and-
**Plaintiff** (17:59): I was told not to return to work by my superiors.
**Hollingsworth** (18:03): Okay. And, um, well, you know, maybe that's something that we need to, to look a little bit more into, but from what I, I understand, um, no one had talked to you. No one, um, you know, you just did not return to work and-
**Plaintiff** (18:18): No, that's, that's, that's not accurate.
**Hollingsworth** (18:18): ... so, um, that is considered a quit.
**Plaintiff** (18:21): That is not accurate at all. That's not accurate. That couldn't be further from the truth.

***

**Plaintiff** (18:56): Are you enforcing that I cannot go back to work, then? Is that a decision you're making?
**Hollingsworth** (19:02): Yes.
**Plaintiff** (19:03): HR is making.
**Hollingsworth** (19:05): Yes.
**Plaintiff** (19:05): Against my own will?
**Hollingsworth** (19:17): Yes.

126.    Hollingsworth informed Plaintiff that Defendants would deduct from his paycheck the cost of his transportation from Dutch Harbor back to Seattle, Washington when the Vessel entered port, which Defendants ultimately deducted from Plaintiff's paychecks.

127.    Plaintiff repeatedly asked Hollingsworth for permission to make a phone call so

COMPLAINT AND JURY DEMAND - 21

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1   he could speak with the EEOC and legal counsel about the conditions on the Vessel.

2        128.    Hollingsworth denied Plaintiff's requests.

3        129.    Despite that Hollingsworth told Plaintiff that she would speak with Vessel

4   management about continued mistreatment of Plaintiff, the harassment and retaliation continued

5   to intensify.

6        130.    Following Plaintiff's call with Hollingsworth, Plaintiff went to the dining area

7   where he found threatening graffiti written on the food line window.

8        131.    Plaintiff videotaped the graffiti.[9]  A screen shot of the graffiti, follows:



21        132.    On June 14, 2021, Plaintiff was again provided a pre-plated serving of food,

---

[9] For the Court's convenience, a copy of the original video recording is available at
https://www.youtube.com/watch?v=-nycpoahbEw&list=PLdtaCrg_SEn89hiJ4cfNG-JI55qYtlzV4&index=6.

COMPLAINT AND JURY DEMAND - 22

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1   despite that the dining line was full of fresh hot food.

2       133.   Plaintiff refused to be denied fresh food and served himself.

3       134.   Collucci called Captain Doremus and reported that Plaintiff was "stealing food."

4       135.   Captain Doremus intervened and told Plaintiff he was not allowed to eat the fresh

5   meals.

6       136.   Captain Doremus followed Plaintiff to his room, stood in his door, and threatened

7   to assault Plaintiff by restraining him and leaving him in his room.

8       137.   Captain Doremus slammed the door to Plaintiff's room shut.

9       138.   Plaintiff videotaped the encounter.[10]

10      139.   The transcript of the video follows:

11      **Collucci** (00:01): Your stuff's right here, man.
        **Plaintiff** (00:03): I'm not eating that.
12      **Collucci** (00:04): That's your stuff.
        **Plaintiff** (00:05): I didn't watch it be prepared, I'm not eating it.
13      **Collucci** (00:06): Well, you have, then you're gonna have to wait
        until the everybody else has eaten.
14      **Plaintiff** (00:09): I can't...
        **Collucci** (00:10): That's the, not your plate.
15      **Plaintiff** (00:11): So are you refusing me meals?
        **Collucci** (00:12): This is your plate. You can take it now.
16      **Plaintiff** (00:14): I'm not eating that.
        **Collucci** (00:15): Or you can wait until everybody else has eaten.
17      **Plaintiff** (00:17): I'm not eating that.
        **Collucci** (00:18): That's the rule. That's the rule.
18      **Plaintiff** (00:21): According to what rule?
        **Collucci** (00:21): You're not supposed to be videotaping in here.
19      **Plaintiff** (00:23): According to what rule?
        **Collucci** (00:25): So, that's the rule.
20      **Plaintiff** (00:26): I have a federal right to record.
        **Collucci** (00:27): Yeah, he's refusing to leave the food line and he's
21      stealing food. Just so you know.

22   _____

23      [10] For the Court's convenience, a copy of the original video is available at
        https://www.youtube.com/watch?v=riehJ8Oo4JE&list=PLdtaCrg_SEn89hiJ4cfNG-
24      JI55qYtlzV4&index=2.

COMPLAINT AND JURY DEMAND - 23

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

**Plaintiff** (00:40): Can't tell me I can't eat. (silence)
**Captain Doremus** (01:15): Are you creating trouble?
**Plaintiff** (01:17): I'm not. I'm not gonna eat a meal that I didn't watch be prepared for me.
**Captain Doremus** (01:21): Good, then don't eat. Your stuff's getting weak bud. I don't care what you record. You're gonna piss me off and what's gonna happen is I'm gonna restrain you and leave you in your room.
**Plaintiff** (01:33): You're gonna restrain me?
**Captain Doremus** (01:34): I have the right.
**Plaintiff** (01:36): For getting food?
**Captain Doremus** (01:37): For being disruptive of everybody on the boat.
**Plaintiff** (01:40): I'm not being disruptive. So I just got physically threatened, okay.

140.    On June 15, 2021, Plaintiff emailed Vessel Recruiter Hollingsworth, and reported Captain Doremus' threat to physically restrain him and leave him in his room after Plaintiff served himself a small plate of fresh food.

141.    Plaintiff informed Hollingsworth that he had evidence of the mistreatment that he was experiencing, including Captain Doremus' threats of physical violence.

142.    Hollingsworth informed Plaintiff that she "d[id] not want to review" his evidence because she believed Plaintiff gathered it against company policy.

143.    Plaintiff also informed Hollingsworth that the mistreatment was causing him emotional and physical symptoms of depression and that he needed immediate medical assistance.

144.    Hollingsworth told Plaintiff that he could go to the Wheelhouse and someone there will help him call Healthforce, a medical provider associated with Defendants.

145.    The Wheelhouse was staffed by Captain Doremus and First Mate Pack— individuals who had engaged in mistreatment against Plaintiff.

146.    Plaintiff indicated that he preferred to contact his own medical provider and

COMPLAINT AND JURY DEMAND - 24

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1  requested privacy due to the sensitive nature of the matters for which he sought assistance.

2      147.   Hollingsworth ignored Plaintiff's requests.

3      148.   Despite Plaintiff's emails to Hollingsworth, the harassment and retaliation

4  continued.

5      149.   Defendants continued to deprive Plaintiff of fresh food and engaged in conduct

6  designed to intimidate and threaten him.

7      150.   On June 16, 2021, Captain Doremus informed Plaintiff that it would be ten more

8  days before the Vessel reached port, despite that Hollingsworth previously informed Plaintiff on

9  June 13, 2021 that it would be approximately six to eight days before the vessel reached port.

10      151.   Captain Doremus said, "By the way, we're charging you by the day. Next time

11  just play by the rules."

12      152.   Defendants ultimately deducted room and board from Plaintiff's paychecks, as

13  Captain Doremus promised.

14      153.   On several occasions, Doremus informed Plaintiff that he would not earn any

15  compensation for the trip because of the deductions that would come out of his percentage of the

16  catch.

17      154.   Crewmembers, including Nick Clubb and Rucinski, taunted and intimidated

18  Plaintiff regularly.

19      155.   Clubb and Rucinski, often talked negatively about Plaintiff in his presence or

20  while standing directly outside his room.

21      156.   To avoid the hostility of the crew, Plaintiff confined himself to his room, often

22  keeping the lights off so no one would know he was inside.

23      157.   Plaintiff would quietly come out of his room to retrieve fruit or use the restroom

24

COMPLAINT AND JURY DEMAND - 25

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1  only when it appeared no other crewmembers were around

2      158.    On June 20, 2021, Plaintiff was given pre-plated serving of old chicken for

3  breakfast.

4      159.    The food was noticeably rancid, and the chicken tasted sour when Plaintiff tried to

5  eat it.

6      160.    Plaintiff grew sick with stomach pains later in the day from the rancid chicken he

7  was fed.

8      161.    On June 21, 2021, the F/T Cape Horn entered port.

9      162.    Before Plaintiff left the Vessel, Captain Doremus called Plaintiff to the

10  Wheelhouse and offered him $50 to sign a "release."

11      163.    Plaintiff did not sign the release.

12      164.    Plaintiff audio recorded the encounter.[11]

13      165.    The relevant portion of the transcript of the recording follows:

> **Captain Doremus** (00:10): Sit down, please.
> **Plaintiff** (01:03): What's up?
> **Captain Doremus** (01:11): There's some paperwork to look over, and sign what you wish to sign. And find out what you [inaudible] . . .You don't have time for this Gil.
> **Plaintiff** (01:40): I'm just gonna take a picture of the conduct warning.
> **Captain Doremus** (01:43): I'll give it to you.
> **Plaintiff** (01:44): All right, perfect. Perfect, thank you. Ha ha.
> **Captain Doremus** (01:48): You don't wanna sign 'em?
> **Plaintiff** (01:49): No, I'm fine.
> **Captain Doremus** (01:53): You want the flight itinerary?
> **Plaintiff** (01:54): Uh, yeah, please. Thank you.

---

[11] For the Court's convenience, a copy of the original audio is available at https://www.youtube.com/watch?v=ht3_Gu6IGEI&list=PLdtaCrg_SEn89hiJ4cfNG-JI55qYtlzV4&index=10.

COMPLAINT AND JURY DEMAND - 26

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

**Captain Doremus** (02:08): Got them all? Uh, $50 for departure. But I need you to sign this one to show it. You need to sign this one.

**Plaintiff** (02:20): You need me to sign a conduct warning to-

**Captain Doremus** (02:21): No.

**Plaintiff** (02:22): Receive my $50?

**Captain Doremus** (02:22): No. You need to sign the release here. You'll be.

**Plaintiff** (02:26): All right.

**Captain Doremus** (02:26): If you want the 50 bucks. You need to sign over something so you don't, uh, poke holes through it.

**Plaintiff** (02:33): All right, sounds good.

**Captain Doremus** (02:36): This line in particular, and date please.

**Plaintiff** (02:38): All right. [inaudible 00:02:46] I'm not signing this, it has "in the voyage statement," I'm not signing it. Thank you, keep your 50 bucks.

**Captain Doremus** (02:51): You don't want the $50?

**Plaintiff** (02:52): No, I'm not, . . . I didn't quit so. Have a good one. Thank you.

**Captain Doremus** (02:56): I thought you were terminated? It, it states it for you.

**Plaintiff** (02:59): It states quit here, I'm not signing it . . .

**Captain Doremus** (03:01): Well the so does- It also says termination.

**Plaintiff** (03:02): I don't need your money at all-

166.    Plaintiff exited the F/T Cape Horn on June 21, 2021.

167.    On October 2, 2021, Vessel Recruiter Hollingsworth provided a negative employment reference for Plaintiff to a reference check company.

168.    Hollingsworth provided false, incomplete, and misleading information regarding Plaintiff's employment with Defendants.

169.    Excerpts from the reference follow:

10-1-2021 Called and reached Amy Hollingsworth. I asked her to confirm previous employment and position held, does she recommend Gil Elie? She answered as follows: " "No, I would not recommend him he quit during mid trip on board our vessel and did not complete his 65-day contract with us. He violated our "electronic policy" which he agreed to not take pictures/videos use any recording devices while working on our vessel on deck or in our

COMPLAINT AND JURY DEMAND - 27

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

factory, while in our employment. . He threatened to sue other employee's co-works with a lawsuit". No, he would not be eligible for rehire as he did not complete his 65-day contract". The tone of voice was polite. (Liz)

\*\*\*

Could you fully describe the circumstances and reason for the separation? He quit mid trip and did not complete his 65-day contact to work the entire time.

170.     Hollingsworth provided false information when she told the refence check complain that Plaintiff threatened to sue his coworkers.

171.     Plaintiff did not threaten to sue any of his coworkers while he was employed by Defendants.

172.     Hollingsworth provided false and misleading information when she told the reference company that Plaintiff quit mid trip.

173.     Defendants listed "termination" on a release that it attempted to get Plaintiff to sign when he exited the Vessel.[12]

174.     Further, Plaintiff explained to Hollingsworth that he did not quit but that Amezcua fired him when he told Plaintiff not to return to work. Hollingsworth admitted that Defendants needed to conduct a further inquiry to determine whether Plaintiff resigned or was fired, and Hollingsworth told Plaintiff that Defendants were not allowing him to return to work in any event.

175.     Hollingsworth failed to "fully describe the circumstances and reason for [Plaintiff's] separation" because she, *inter alia,* did not explain that Plaintiff was told not to return to work by Amezcua, that Defendant's listed "termination" on the release, that

---

[12] *See supra* note 11, and accompany text and audio ("Captain Doremus (02:56): I thought you were terminated? It, it states it for you. Plaintiff (02:59): It states quit here, I'm not signing it . . .Captain Doremus (03:01): Well the so does- It also says termination.").

COMPLAINT AND JURY DEMAND - 28

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

Hollingsworth informed Plaintiff that Defendants did not allow Plaintiff to return to work, and that the reason Plaintiff made audio and video recordings was to document illegal conduct and protect his legal rights.

176.    But for Plaintiff's complaints of discrimination while he was employed by Defendants, Hollingsworth would not have given Plaintiff a negative reference by providing false, incomplete, and misleading information.

177.    Plaintiff suffered from emotional distress and lost wages, which were proximately caused by Defendants' illegal harassment and retaliation.

## CAUSE OF ACTION

### COUNT 1

#### 42 U.S.C. §1981
**Retaliation**
(*Against all Defendants*)

178.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

179.    The foregoing conduct violates 42 U.S.C. §1981.

180.    Defendants engaged in illegal, intentional discrimination by retaliating against Plaintiff after he complained of discrimination.

181.    Plaintiff had a reasonable, good faith belief that Defendants engaged in unlawful racial harassment and retaliation against him.

182.    Because of Plaintiff's reasonable, good faith belief that Defendants subjected him to unlawful harassment and retaliation, Plaintiff reported the conduct to multiple members of Defendants' management team, including without limitation: Captain Doremus, First mate Pack, Purser Rucinski, Vessel Recruiter Rosy Barocio-Garibay, and Vessel Recruiter Amy

COMPLAINT AND JURY DEMAND - 29

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    Hollingsworth.

2         183.    Following Plaintiff's complaints of racial harassment and retaliation, Defendants

3    subjected Plaintiff to materially adverse employment actions designed to punish him for his

4    complaints and dissuade Plaintiff and other employees from reporting discrimination in the

5    future.

6         184.    But for Plaintiff's complaints of harassment and retaliation, Defendants would not

7    have subjected Plaintiff to the following materially adverse employment actions, including

8    without limitation:

9              a.    assault with fish and water;

10             b.    reassignment to a less desirable work shift;

11             c.    denial of access to the Vessel's upper deck;

12             d.    discipline for illegitimate infractions;

13             e.    suspension of employment;

14             f.    termination of employment;

15             g.    denial of hot food and/or nutritious meals;

16             h.    derisive comments and symbols;

17             i.    vandalization of Plaintiff's belongings and food;

18             j.    threats of physical violence;

19             k.    conduct designed to punish and intimidate;

20             l.    restriction of Plaintiffs ability to communicate with medical personnel,

21                   legal counsel, and/or the United States Equal Employment Opportunity

22                   Commission;

23

24

COMPLAINT AND JURY DEMAND - 30

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1     m. providing false, misleading, and incomplete information to a reference

2       check company to give Plaintiff a negative reference.

3  185. As a consequence of Defendants' unlawful conduct, Plaintiff suffered severe

4 emotional distress and lost wages.

5  186. Defendants' actions proximately caused Plaintiff's injuries.

6  187. Plaintiff requests relief as provided in the Prayer for Relief below.

7         **COUNT 2**

8       <u>WLAD RCW § 49.60 et seq.</u>
          **Retaliation**
9       (Against all Defendants)

10  188. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth

11 herein.

12  189. The foregoing conduct violates the WLAD RCW §49.60, *et seq.*

13  190. Defendants engaged in illegal, intentional discrimination by retaliating against

14 Plaintiff after he complained of discrimination.

15  191. Plaintiff had a reasonable, good faith belief that Defendants engaged in unlawful

16 racial harassment and retaliation against him.

17  192. Because of Plaintiff's reasonable, good faith belief that Defendants subjected him

18 to unlawful harassment and retaliation, Plaintiff reported the conduct to multiple members of

19 Defendants' management team, including without limitation: Captain Doremus, First mate Pack,

20 Purser Rucinski, Vessel Recruiter Rosy Barocio-Garibay, and Vessel Recruiter Amy

21 Hollingsworth.

22  193. Following Plaintiff's complaints of racial harassment and retaliation, Defendants

23 subjected Plaintiff to materially adverse employment actions designed to punish him for his

24

COMPLAINT AND JURY DEMAND - 31

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    complaints and dissuade Plaintiff and other employees from reporting discrimination in the

2    future.

3         194.    Plaintiff's complaints of harassment and retaliation were, at least, a substantial

4    factor in motivating Defendants' materially adverse employment actions against Plaintiff,

5    including without limitation:

6              a.    assault with fish and water;

7              b.    reassignment to a less desirable work shift;

8              c.    denial of access to the Vessel's upper deck;

9              d.    discipline for illegitimate infractions;

10             e.    suspension of employment;

11             f.    termination of employment;

12             g.    denial of hot food and/or nutritious meals;

13             h.    derisive comments and symbols;

14             i.    vandalization of Plaintiff's belongings and food;

15             j.    threats of physical violence;

16             k.    conduct designed to punish and intimidate;

17             l.    restriction of Plaintiffs ability to communicate with medical personnel,

18                  legal counsel, and/or the United States Equal Employment Opportunity

19                  Commission;

20             m.    providing false, misleading, and incomplete information to a reference

21                  check company to give Plaintiff a negative reference.

22        195.    As a consequence of Defendants' unlawful conduct, Plaintiff suffered severe

23    emotional distress and lost wages.

24

COMPLAINT AND JURY DEMAND - 32

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    196.    Defendants' actions proximately caused Plaintiff's injuries.

2    197.    Plaintiff requests relief as provided in the Prayer for Relief below.

3                                    **COUNT 3**

4                              <u>WLAD RCW § 49.60 et seq.</u>
                              **Hostile Work Environment**
5                                (*Against all Defendants*)

6    1.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth

7    herein.

8    2.    The foregoing conduct violates the WLAD RCW §49.60, *et seq.*

9    3.    Defendants engaged in illegal, intentional discrimination by subjecting Plaintiff to

10    a hostile work environment based on his race, African American.

11    4.    Defendants subjected Plaintiff to severe and pervasive racial harassment.

12    5.    Plaintiff repeatedly and explicitly complained to Defendants about the racial

13    harassment he experienced.

14    6.    Members of Defendants' upper management team and Plaintiff's supervisors–

15    who had the power to make employment decisions that changed the materials terms and

16    conditions of Plaintiff's employment—participated in the racial harassment against Plaintiff.

17    7.    Despite notice of the harassment perpetrated against Plaintiff, Defendants failed

18    to take adequate remedial measures.

19    8.    As a consequence of Defendants' failure to take adequate remedial measures, the

20    harassment against Plaintiff continued, intensified, and culminated in his termination.

21    9.    As a consequence of Defendants' unlawful conduct, Plaintiff suffered severe

22    emotional distress and lost wages.

23    10.    Defendants' actions proximately caused Plaintiff's injuries.

24

COMPLAINT AND JURY DEMAND - 33

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1       11.     Plaintiff requests relief as provided in the Prayer for Relief below.

2                           **JURY DEMAND**

3       12.     Plaintiff hereby demands trial of his claims by jury to the extent authorized by

4  law.

5                            **PRAYER**

6       13.     **WHEREFORE**, Plaintiff respectfully requests that judgment be entered against

7  Defendants in his favor and prays for relief as follows:

8              a.       An order granting Plaintiff nominal and compensatory damages in an

9                           amount to be determined at trial;

10             b.       An order granting Plaintiff backpay and front pay in an amount to be

11                           determined at trial;

12             c.       An order granting Plaintiff punitive damages;

13             d.       An order awarding Plaintiff pre-judgment and post-judgment interest;

14             e.       An order awarding Plaintiff costs and expenses, including reasonable

15                           attorneys' fees;

16             f.       An order declaring that Defendants violated 42 U.S.C. § 1981;

17             g.       An order declaring that Defendants violated the WLAD;

18              h.       Issue an injunction compelling Defendants to cease and desist racially

19                           harassing employees and retaliating against employees who report

20                           discrimination;

21             i.       Award any such other and further relief as this Court may deem just and

22                           equitable.

23

24

COMPLAINT AND JURY DEMAND - 34

CASE NO.

Shishido Taren PLLC
705 Second Ave. Suite 1500
Seattle, WA 98104
(206) 486-2069
rshishido@shishidotaren.com

1    Dated: October 29, 2021

2    Respectfully Submitted,

3

4                                    By:    *s/ Robin J. Shishido*

5                                    By:    *s/ Jordan A. Taren*
                                     Robin J. Shishido, WSBA No. 45926
6                                    Jordan A. Taren, WSBA No. 50066
                                     Shishido Taren PLLC
7                                    705 Second Ave. Suite 1500 Seattle, WA 98104
                                     (206) 486-2069
8                                    rshishido@shishidotaren.com
                                     jtaren@shishidotaren.com
9

10                                   *Plaintiff's Local Counsel*

11                                   Joshua Friedman
                                     Friedman & Houlding LLP
12                                   1050 Seven Oaks Lane
                                     Mamaroneck, NY 10543
13                                   Tel (212) 308-4338 x 5
                                     Fax (866) 731-5553
14                                   Josh@friedmanhouldingllp.com

15
                                     *Plaintiff's Counsel* (to apply *pro hac vice*)
16

17

18

19

20

21

22

23

24

COMPLAINT AND JURY DEMAND - 35          Shishido Taren PLLC
                                        705 Second Ave. Suite 1500
CASE NO.                                Seattle, WA 98104
                                        (206) 486-2069
                                        rshishido@shishidotaren.com